THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | CASE NO. 1:00 CR 10402- |
| | ) | 023-JLT |
| vs. | ) | |
| | ) | |
| | ) | THE HONORABLE JUDGE |
| HILARIO CARPIO, | ) | JOSEPH L. TAURO |
| | ) | |
| Petitioner. | ) | |

04-10183JLT

MAGISTRATE JUDGE Dein

MEMORANDUM ON MOTION TO VACATE
SENTENCE PURSUANT TO 28 U.S.C. § 2255

Comes now the Petitioner, Hilario Carpio, appearing Pro-Se, who respectfully moves this Honorable Court to Vacate the sentence imposed in the above captioned case, pursuant to 28 U.S.C. § 2255, and for reasons further presented infra.

PLEA FOR LIBERAL CONSIDERATIONS

Petitioner respectfully moves this Honorable Court to grant all liberal considerations with respect to this action, pursuant to Haines v. Kerner, 404 U.S. 519 (1972), as Petitioner is not an attorney, has not attended any law school, and has had no professional training with respect to the filing of legal pleadings.

## STATEMENT OF THE CASE

On June 19, 2002, the Petitioner, Hilario Carpio, appeared before the Honorable Joseph L. Tauro and pursuant to a written agreement, entered a plea of guilty to a one (1) count indictment of Conspiracy to Possess with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841(a)(1), a class A Felony.

On April 1, 2003, the Petitioner was sentenced by the Court consistent with his offense Level of 25 to 63 months of incarceration.

The Petitioner was implicated in a government investigation that had court authorized intercept communications of three (3) different cellular telephones being utilized to distribute crack cocaine by the Marco Delapaz Organization in an around Lawrence, Massachusetts. The govenment alleged that the Petitioner supplied cocaine to the Delapaz Organization.

## FACTS OF THE CASE

The government started on investigation from late September through mid-November, 2000 using court authorized intercepts of communications involving the Marco Delapaz Organization that was distributing crack cocaine in and around Lawrence, Mass.

During the government's investigation, the Petitioner worked inconjunction with co-defendant Luis Meletiche, who delivered cocaine to the Marco Delapaz crack cocaine organization. Most of the government's evidence against the Petitioner and his co-defendant Meletiche arise out of a transaction with Marco Delapaz on September 26, 2000. Intercepted telephone calls revealed that the Petitioner, Meletiche and Delapaz negotiated the payment terms for the transaction. During the call, Delapaz said he wanted "100" (100 grams) and the Petitioner said it would be "at 9.5" ($950.00). The drug transaction was completed and again on October 12, 2000, Delapaz, the Petitioner and Meletiche engaged in another telephone call for the purposes of transacting a drug transaction for approximately 200 grams of quality cocaine. Both the Petitioner and Meletiche delivered 200 grams of cocaine to Delapaz.

The course of the government's investigation evidence gathered showed that there was a preexisting relationship between the Petitioner, Meletiche and the Delapaz Organization that appears to show that between 2,000 to 3,500 grams of cocaine none foreseeable to the Petitioner.

### ARGUMENTS

The background commentary to U.S.S.G. § 3B1.2 reveals that the range of adjustments in § 3B1.2 are for "A defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant" and that the

3

determination as to what adjustment should be applied is "heavily dependent upon the facts of the particular case." It is not the "defendants' exact role or status in the criminal activity" that decides whether an adjustment under this section is appropriate. It is an assessment of the defendat's culpability in the context of all the circumstances. U.S. v. Garcia, 920 F.2d 153, 155 (2d Cir. 1990); U.S. v. Sanchez, 925 F.Supp 1004, 1011 (S.D.N.Y.).

A defendant seeking a sentence reduction for a role adjustment has the burden of extablishing "by a preponderance of the evidence that he or she is entitled to a reduction due to his or her reduced level of culpability," U.S. v. Soto, 959 F.2d 1181, 1187 (2d Cir. 1992). Ultimately, then, it is the role of the court to review the facts of the case with a view to ascertain whether a defendant is entitled to an adjustment for a role in the offense under § 3B1.2. This is done on a case-by-case basis and the court's discretion is supreme unless it was exercised erroreously.

It is the Petitioner's contention that he is entitled to a two (2) Level decrease as a minor participant in the drug conspiracy involving twenty-two (22) other co-conspirators. The Petitioner's role in the conspiracy was to deliver small quantities of cocaine to the Delapaz Organization. In conjunction with his co-defendant Luis Meletiche, the Petitioner's main function was to transport drugs to Marcos A. Delapaz. The Petitioner's role was to assist Meletiche in delivering drugs for which the Petitioner

4

would receive payment. He was not responsible for the distribution of all of the drugs to the Delapaz Organization nor for disbursing of the proceeds. He was basically performing a functioning role. As such, it is respectfully submitted that the Petitioner was a minor participant and is entitled to a two (2) Level decrease. The Petitioner did not receive the mitigating role adjustment under §3B1.2 because his attorney was ineffective as a result of failing to raise the issue at sentencing, in which the Court overstated his offense level cupability under 2D1.1(a)(3) of the sentencing guidelines without specific finding of facts beyond reasonable doubt.

On May 16, 2002, the government and Petitioner entered into a plea agreement, which stated that if the defendant provides substantial assistance, the government would file a 5K1.1 motion allowing the Court to depart from the guidelines. Shortly after his arrest, the Petitioner agreed to cooperate with the government. On approximately 6 different occasions, the Petitioner had proffer sessions with the prosecutor and investigating agents. During these sessions, the Petitioner informed on his other co-conspirators, provided intelligence information on other drug trafficking organizations, and was shown photographs of other drug trafficking suspects which he identified to investigators. In fear of his life and of great personal risk to his safety and family, the Petitioner did provide the government with substantial assistance.

The plea agreement of May 16, 2002, that was drafted by the

government specifically states, "In the event that Defendant provides substantial assistance in the investigation or prosecution of another person who has committed a criminal offense, the U.S. Attorney agrees that, at or before the sentencing, the U.S. Attorney will make a motion under U.S.S.G. § 5K1, so that the sentencing court may impose a sentence below that which otherwise would be required under the sentencing guidelines. The determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review.  The U.S. Attorney expressly reserves the right to decline to file a motion pursuant to U.S.S.G. § 5K1 if Defendant violates any condition of his pretrail release, violates any of the requirements of honesty and candor detailed in paragraph 6(a) above, or engages in any criminal conduct after the date he signs this agreement.  Defendant may not withdraw his/her plea if the U.S. Attorney determines that Defendant has not rendered substantial assistance, or if the Court refuses to grant the U.S. Attorney's motion for a downward departure."

"If Defendant provides substantial assistance, subject to all the provisions of paragraphs 6(a) and (b) above, the U.S. Attorney will advise the sentencing Judge of the full nature, extent, and value of the assistance provided by defendant.  The U.S. Attorney reserves the right to recommend a particular sentence or sentencing range, or to make no recommendation at defendant's sentencing."

6

The Petitioner did comply with the "terms of cooperation" that were written into the plea agreement that was dated May 16, 2002. The Petitioner did agree to cooperate fully with law enforcement agents and the U.S. Attorneys' Office. He provided complete and truthful information to all law enforcement personnel that had interviewed him during his proffer session. The Petitioner answered all the questions that were put to him by the investigating agents and the U.S. Attorneys' Office and he did not withhold any information. The Petitioner did not attempt to protect any person through false information, he clearly implicated his co-conspirators in the Delapaz Narcotics Organizations and he identified other drug traffickers to investigating agents and prosecutors.

Clearly, the government did not make a motion under U.S.S.G. § 5K1.1 at the or before the time of Petitioner's sentencing. Sentencing courts ordinarily cannot grant downward sentence departure for substantial assistance in the absence of a government motion. U.S. v. Treleaven, 35 F.3d 911 (9th Cir. 1994). Without a motion by the government, the district court has no authority to consider downward departures under section of the sentencing guidelines, permitting sentence reduction for substantial assistance to authorities. U.S. v. French, 900 F.2d 1300 (8th Cir. 1990).

Nonetheless, cooperation agreements, like plea bargains, may usefully be interpreted with principles borrowed from the law of contract. U.S. v. Alexander, 869 F.2d 91, 95 (2nd Cir.

7

1989). Applying those principles, the appellant court observe that where a contract is conditioned on the satisfication of the obligor. The condition is not met "if the obligor is honestly, even though unreasonably, dissatisfied. There is, as noted in U.S. v. Rexach, 896 F.2d 710, 714 (2nd Cir. 1990), an implied obligation of good faith and fair dealing in every contract. Consequently, the prosecution's determination that it is dissatisfied with the defendant's performance under the cooperation agreement, as with other areas of prosecutorial discretion, may not be reached dishonestly or in bad faith.

In this case, the government acted in bad faith in not making a motion substantial assistance before the Court. The Petitioner complied with all of the requirements of his substantial assistance agreement. He had approximately six (6) proffer sessions with the prosecutor and investigating agents. The Petitioner did so at great personal risk to himself and his family. Once, even telling the government that if he engaged in "buy bust" transactions with known drug traffickers, he and his family would be killed by Dominican drug traffickers. Despite this, the Petitioner continued to provide the government with intelligence information where upon the government initiated other narcotics investigations that were based on this information.

The Petitioner contends that, at a minimum, he is entitled to an evidentiary hearing to determine if the government acted in bad faith and other matters that are raised in the instant motion. The Petitioner submits that resolution of the issues

raised will require an examination of evidence beyond the scope of the record.

The Supreme Court held that a Petitioner is entitled to an evidentiary hearing if he alleges facts which, if true, would warrant relief. An evidentiary hearing is required when the petitioner's allegation, if proven, would establish the right to relief, <u>Townsend v. Sain</u>, 372 U.S. 293, 312, 83 S. Ct. 745-57 (1963). When determining whether an evidentiary hearing is required a court must accept as true the factual asscertains made by the petitioner.

Lastly, the petitioner would like to address the issue in which he did not receive an additional two (2) points downward departure for the "safety value". The petitioner qualifies for the so-called "safety value", U.S.S.G. § 5C1.2, relief for certain non-violent first time offenders from otherwise applicable mandatory minimum sentences. The petitioner pled guilty, answered investigators questions truthfully, was a minor participant in the conspiracy, and is a non-violent first time offender.

The petitoner met several time with Cherie L. Krigsman, Assistant United States Attorney the prosecutor in the case. And she can verify much of what the petitioner is alleging in his motion. The petitoner had never met with Michael J. Sullivan, U.S. Attorney except for the day of his sentencing in which Mr. Sullivan advised the court that, yes, the petitioner did cooperate with the goverment but that it, "was not enough". Petitioner would like to point out that all of his proffer sessions were with Cherie L. Krigsman who was not present in court the day of the petitoners sentence.

9

## Conclusion

The Petitioner respectfully requests that this Honorable Court vacate, set aside, or correct the sentence in this case. At the very minimum, the Petitioner requests an evidentiary hearing in support of these meritorious issues.

Respectfully submitted this \_\_6\_\_ day of January, 2004.

*Hilario Carpio*
Hilario Carpio
Pro Se

CERTIFICATE OF SERVICE

I certify that on January 6, 2004, I mailed a complete copy of this Motion to Vacate, Pursuant to 28 U.S.C. 2255, and all attachments to all parties, addressed as shown below:

Clerks Office
United States District Court
District of Massachusetts
U.S. Courthouse Bldg.
Boston, Mass. 02109


U.S. Attorneys Office
U.S. Courthouse Bldg.
Boston, Ma.   02109
attn: Cherie L. Krigsman, AUSA

Respectfully submitted,

Hilario Carpio
Reg. No. 21484-069
F.S.L. Elkton
P.O. Box 10
Lisbon, Ohio 44432